## *In re* ASSESSMENT OF TAXES, JOHN II ESTATE, LIMITED.

### Appeal from Tax Appeal Court, Honolulu.

Submitted February 29, 1904.    Decided April 14, 1904.

Frear, C.J., Galbraith and Perry, JJ.

A granted to B for a term of years, at an annual rental of $8000, the right to enter upon three certain parcels of land, to dig tunnels and ditches, to construct dams, reservoirs, flumes, pipe-lines and electrical and other power works and to take all water found and which might thereafter be found on the lands named. The lessee used the land in accordance with the rights so granted. The lessor returned one of the tracts as exempt from taxation under C.L., §897, claiming that it was fenced and that cattle were excluded therefrom. Held, that such tract was not exempt, as "other use" was made of it.

Where the language of a memorandum of assessment is ambiguous. the construction placed upon it by the parties before the Tax Appeal Court and by that court itself will prevail.

### OPINION OF THE COURT BY FREAR, C.J.

#### (Perry, J., dissenting.)

The facts are sufficiently set forth in the dissenting opinion of Mr. Justice Perry.

As to whether the assessment is on the forest land or on the water privilege alone we think it must be taken to be on the for-

mer, as the wording is to some extent ambiguous and both parties proceeded before the Tax Appeal Court on the theory that the assessment was on the land and the decision of that court is based on that theory, although there are other papers in the case pointing in the other direction.

In our opinion the forest land is not within the exempting statute, assuming that that statute is still in force, not because the appellant has leased certain rights in this land along with other lands, but because other use is actually made of this land under that lease.

The lease of the water privilege was made in 1899 at an annual rental of $8,000. The assessment of the forest land is $64,000—estimated on the eight-year rental rule, but this lease and rental is of all three tracts, the 8000 and 836-acre pasture tracts and this 5000-acre forest tract, and the evidence shows that by reason of this rental the assessments of the two pasture tracts were raised the year before from $44,180 to $83,360, and the year before that the assessment of the 8000-acre tract was raised from $24,000 to $40,000. The assessment of the forest land was raised the year before that now in question from $7,500 to $12,500 and the year before that from $5,000 to $7,500. Thus not only should the value due to the lease be distributed among the three lands which it covers, and perhaps the better way would be to assess all three lands as a whole, but there is much reason to believe that at least a part of that value is included in the assessments of the two pasture tracts—what part is included in the pasture tracts and what part should be included in the forest tract, it is impossible to say. Under these circumstances we think that the most that can be done is to place the valuation of the forest land at the amount at which the Tax Appeal Court placed it the year before on the evidence then produced, there being nothing to show that the value has changed meanwhile.

It is so ordered.

*Robertson & Wilder* for the assessor.

*J. A. Magoon* and *J. Lightfoot* for the tax-payer.

The tax-payer returned for the year 1903 the following three items, among others:

"R. P. 5732. L. C. A. 8241. 8000 acres. Kula. Ahu-
  puaa of John Ii—pasture and water right........$80,000.

"Grant 6. 836 acres. Kula. Waikakalaua. do do."
  (meaning "pasture and water rights")..........$ 8,360.

"R. P. 5732. L. C. A. 8241. 5000 acres. Forest.
  Ahupuaa John Ii (exempted as a Forest Reserva-
  tion under Chapter 61, Civil Laws 1897)......." The assessor accepted the first and second items as returned, made blue-pencil marks against the third and added, later in the return, an item as follows: "Water Priv. Waipio. For. Land. Annual Rent, 8000. Lessee, Oahu Sugar Co. $64000." On June 30, 1903, the assessor wrote the tax-payer: "In accordance with Act 36, of the Session Laws of 1898, you will please take notice that your property is assessed as follows:  *  *  *  Water Privileges, Waipio For. Land leased to Oahu Sugar Co., $64000." The certificate of appeal, dated July 20, 1903, and signed by the assessor (the notice of appeal is not with the files), certifies "that Jno. Ii Estate by J. A. Magoon, Esq., of this District, is assessed for the year 1903 as follows:  Value Real Estate, $144000.  *  *  *  That he disputes the following items of such assessment, viz: Real Property, $64000.  *  *  *  *  And has duly appealed from such assessment.  *  *  *"  At the hearing before the tax appeal court both parties proceeded on the assumption that the assessment of $64000 was on the 5000 acres of forest land claimed by the tax-payer to be exempt (counsel for the Ii Estate stated, however, that he felt doubtful as to the real meaning or intent of the assessment).  Just how the tax court regarded the matter is not entirely clear.  In its written decision sustaining the assessment, it described the subject of the appeal as "5000 acres Ahupuaa of John Ii at Waipio, Ewa, returned exempt as a forest reservation and assessed at $64000", but in the certificate, made in conformity with the requirement of §886, C.L., the appeal is said to be "from the decision  *  *  *  sustaining the valuation and assessment of the Tax Assessor, in his assessment against the John Ii Estate, Limited, as follows: Ahupuaa of John Ii (pasture land and water right) valuation $80000, assessed by the assessor $80000.

"Water privilege for Waipio for land leased to Oahu Sugar Company, assessed $64000, returned by owner nothing.

"Taxes payable by the John Ii Estate, Limited, increased $640 beyond the amount which would have been payable according to the owner's return."

The appellant contends that the assessment of $64000 was upon the whole water privilege leased to the Oahu Sugar Company and not upon the forest land and therefore can not stand, on the ground that a separate assessment of water rights as such is not permissible under our statutes. The assessor, on the other hand, contends that the assessment was upon the forest land. The statute, C.L., §854, as amended by Act 36, Laws of 1898, contemplates that ordinarily assessments shall be made before the first day of July of each year. The assessment in this case was made before July 1, 1903, as is shown by the notification to the tax-payer above referred to. What the parties have said and done since the making of the assessment, simply serves to show the construction which they at the time placed upon the original memorandum or entry of assessment noted on the return. The presumption is that the same entry was made in the tax books or lists. There has been no amendment to the original assessment. In my opinion, the language used is not capable of the construction contended for by the assessor. The assessment is on the "water privilege" as such and not on the forest land. If the latter had been intended, the valuation would naturally have been placed against the item of 5000 acres as returned although this consideration, if it stood alone, would not be conclusive. As late as June 30, 1903, as shown by the letter of that date, the assessment was construed by the assessor himself as being on the "water privilege" and nothing to the contrary is to be found in his certificate of July 20. The water privilege assessed would seem, further, to have been that only to which the forest land is made subject by the lease, but this particular point need not be definitely decided for, as will appear later, it does not materially affect the result.

The lease relied upon by the assessor to sustain his valuation grants to the Oahu Sugar Co. for the period of 58 years from

March 31, 1899, for an annual rent of $8000, the right at all
times during the term "to enter upon and to pass over all lands.
now belonging to or controlled by the party of the first part, sit--
uated in the District of Ewa, Island of Oahu (including the
Ahupuaa of Waipio) which are situated above 650 feet above
sea level; that is to say, all lands mauka of the lands heretofore
held by the party of the second part under lease from the party
of the first part; and to bore, dig, tunnel and explore for water
in any manner on said premises; and also to construct and main-
tain all such dams, reservoirs and other works for the obtaining,
developing or storing of water as to the party of the second part.
may seem expedient; and also to construct and maintain upon,
over or through said premises all such wells, ditches, tunnels,
flumes, pipe lines, bridges and conduits for the taking and carry-
ing away of said water as to the party of the second part may
seem best; and also to take, convey away and use all water found
upon the premises hereinabove referred to, and also all water
which may hereafter be obtained upon said premises, in conse--
quence of the operations of the party of the second part or other-
wise, except as below reserved; to or upon all or any lands now
or hereafter in the possession or under the control of the party of
the second part for irrigation and domestic purposes and to gen-
erate electrical and other power and to construct power works for
such purposes on the lands of the party of the first part above
referred to, and to conduct such power over lands of the party of
the first part for use only however on the premises of the party
of the second part for the manufacture of sugar and other pur-
poses incidental thereto, with the full right to first store and im-
pound such water or not as the party of the second part may see
fit; and also to construct all such works and to do all acts in such
number, manner and location as to the party of the second part
may seem best; and also to have and enjoy all such roads and
right of way as may be necessary for any of the above purposes;
and also to take and use for such purposes such soil and rock
upon said premises as may be necessary." Both the 8000 acres.
of pasture land and the 5000 acres of forest land, as well as the

836-acre piece for the remainder at least of the term of a certain
lease of it formerly held by the Ii Estate, are subjected to the
rights so granted. By the terms of the instrument it is expressly
agreed "that said party of the second part shall hold harmless
and indemnify the said party of the first part for all loss or
damage that it may sustain by reason of claims of riparian own-
ers on account of the taking or diverting all or any portion of
the water as hereinabove provided",—in other words no water
rights are granted other than those belonging to the lessor.

Rights such as those granted by this lease are taxable prop-
erty. If held in fee, they are land and real property within
the meaning of Section 818 of the Civil Laws; a reversionary
interest in them would come under the same class, while a lease-
hold interest is personal property within the meaning of Sec-
tion 819. It may be that under some circumstances such rights
may be separately taxed, as, for example, where they are held
in fee by one who owns no other land; but in the case at bar the
lessor's interest in them may not, in my opinion, be so taxed. In
the first place, they are leased and used by the lessor jointly with
the three lands out of which they were granted and are not in
fact or within the meaning of §820 an item of land distinct from
the remainder of the land. Secondly, their value, as will appear
later, has been already included very largely, if not wholly, in
the return and assessment of the 8000 acres and the 836 acres.

The claim that the 5000-acre tract of land is exempt under
Chapter 61 of the C. L. (Section 897) can not be sustained, even
assuming that the provisions of that chapter are unrepealed and
in force. Section 897 reads as follows:

"In all cases where forest land is fenced for the purpose of
protecting the forest or springs or streams of water rising on
said premises or flowing through the same, and all live stock are
excluded from the same, and no other use of such lands or its
products is made, such land, so long as such conditions exist,
shall be exempt from taxation.

"In order to secure such exemption, the person claiming it
shall, annually between the first and thirty-first days of July
make a sworn statement to the local Tax Assessor describing

the land in detail and setting forth the facts upon which the exemption is claimed, including an agreement that in consideration of the exemption from taxes he will during the year next succeeding keep such land properly fenced, will not allow any live stock upon it, and will not use such land or its products during such year without first paying the taxes thereon."

The land in question does not come within the class designated by this section because, while it has been fenced and all live stock has been excluded from it, other use is being made of it. The lease authorizes the digging of tunnels and ditches and the construction of dams, reservoirs, flumes, pipe lines, bridges and other works for the obtaining, developing, storing and taking away of all water found and which may hereafter be obtained on the land and the powers granted have been, the evidence shows, utilized by the lessee in some if not in all of these respects. By implication the lessee is also authorized, so far as may be necessary to the enjoyment of the rights, to destroy portions of the growing forest not only by cutting in order to dig ditches and reservoirs but also by damming and impounding water in narrow gulches or other suitable places. Again, the lessee may construct on the land works for the generating of electrical and other power. The object of the statute, as stated in the preamble, is to preserve forests and thus increase the water supply. Some if not all of these enumerated uses are inconsistent with the attainment of that object, and none of them, other than the fencing and exclusion of stock, in furtherance of it. It was not the intention of the legislature to exempt from taxation land, such as this, put to uses yielding a substantial income but merely to exempt lands set apart by the owners for the public purpose, and no other, of preserving the forests and the springs and streams of water thereon.

As to values. The express words of the return show that the earning capacity of the 8000 acres and of the 836 acres as disclosed by the lease was considered by the appellant in fixing the valuations of $80000 and $8360 respectively. The tax court in view of that earning capacity had sustained assessments for 1902 at those figures and in the return now under consideration

the appellant had simply adopted the same valuation. The assessor accepted them, and then committed the error of taxing the whole water privilege, as he terms it, in a separate item at an additional valuation of $64000, the sum of eight years' rental. This, if allowed to stand, would clearly be duplicate taxation. If that part of the leased rights arising out of the 5000 acres was not considered in determining the earning capacity of the 8836 acres or in fixing the valuation of the latter, it may be so considered with reference to the 5000 acres; but it cannot contribute to the value of both tracts. *

The forest land is of but little if any value aside from such as is given to it by the water to be found within it. The 8000 acres and the 836 acres are pasture lands producing an annual income of $1000. The present annual rent or income from all three lands, including that derived under the lease, is $9000. Aside from the income-producing capacity and from the fact that the owner returned the two pasture lands for 1903 at $88360, that the forest land, now claimed to be exempt, was valued by the tax court in 1902 at $12500 and that no appeal from that valuation was taken by the owner, no evidence whatever has been adduced by either party tending to show the full cash value of the three lands. If the eight-year rental rule were applied, the resulting aggregate valuation would be $72000. This must be controlled, however, by the admitted values of $80000 for the 8000 acres, $8360 for the 836 acres and $12500 for the 5000 acres. The total valuation of the three tracts of land, considering also the rights reserved under the lease, should not, upon the evidence now before the court, be more than $100860. This serves to strengthen the conclusion that in the item of $64000 there is duplicate taxation, for with it the three lands are valued in all at $152360.

Owing to the indivisible nature of the rights leased, it is impossible to say what portion of the $8000 rent is earned by and should be attributed to the 5000 acres, what to the 8000 acres and what to the 836 acres. All three tracts, should, I think, be assessed together in the absence, at least, of any change in the

conditions, the rent reserved under the lease as well as all other income derived from them being material elements to be considered in determining their value. The forest land has not yet been assessed. It is not for this court to assess it in the first instance. In view of the fact that it is impossible to ascertain just how far the rights granted out of it have been already permitted to contribute to the valuation of the other items, care should be taken in assessing it that no duplicate taxation results. The assessment should be such that the aggregate of the assessments on the three lands shall not exceed their total cash value.

The appeal should be sustained, the decision of the tax court reversed and the assessment of $64000 on the "water privilege" set aside. The assessor should now assess the 5000 acres of forest land.